**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

--------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 11 |
| REVEL AC, INC., *et al.* | Case No. 14-22654 (MBK) |
|       Debtors.[1] | |

--------------------------------------------------------X

| | |
|---|---|
| IDEA Boardwalk, LLC, | |
|       Plaintiff | |
| v. | Ad. Pro. No. 14-01756 (MBK) |
| Revel Entertainment Group, LLC, | |
|       Defendant. | |

--------------------------------------------------------X

**APPEARANCES:**

Stuart J. Moskovitz, Esq.
Law Offices of Stuart J. Moskovitz, Esq.
819 Highway 33
Freehold, NJ 07728
*Attorney for Polo North Country Club, Inc.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).

Jeffrey Cooper, Esq.
Barry Roy, Esq.
Rabinowitz, Lubetkin & Tully, L.L.C.
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
*Attorneys for IDEA Boardwalk, LLC*

Warren J. Martin Jr., Esq.
Porzio Bromberg & Newman P.C.
100 Southgate Parkway,  P.O. Box 1997
Morristown, NJ 07962
*Attorneys for Exhale Enterprises XXI, Inc., GRGAC1, LLC, GRGAC2, LLC, GRGAC3, LLC, Mussel Bar AC, LLC, PM Atlantic City, LLC, RJ Atlantic City, LLC and The Marshall Retail Group, LLC ("Amenity Tenants")*

Robert K. Dakis, Esq.
Morrison Cohen, LLP
909 3rd Avenue
New York, NY 10022
*Attorneys for American Cut AC Marc Forgione, Azure AC Allegretti, and Lugo AC, LLC ("LDV Tenants")*

Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Ryan T. Jareck, Esq.
Cole Schotz P.C.
25 Main Street, P.O. Box 800
Hackensack, NJ 07602
*Attorneys for the Official Committee of Unsecured Creditors*

Michael Viscount, Esq.
Samuel Israel, Esq.
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103

            -and-

John K. Cunningham, Esq.
Richard S. Kebrdle, Esq.
Kevin M. McGill, Esq.
Jason N. Zakia, Esq.
White & Case LLP
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
*Attorneys for the Debtors*

**MICHAEL B. KAPLAN, U.S.B.J.**

# MEMORANDUM DECISION

## INTRODUCTION

Before the Court is the cross motion ("Cross Motion") of IDEA Boardwalk, LLC ("IDEA"), filed in connection with the Debtors' prior motion to reject certain leases and executory contracts, in which IDEA seeks an order clarifying its rights under 11 U.S.C. § 365(h). In rendering its decision herein, the Court also addresses the respective rights of the Amenity Tenants[2] and the LDV Tenants[3], which subsequently joined in the Cross Motion (hereinafter, IDEA, the Amenity Tenants, and the LDV Tenants may be referred to, collectively, as "the Tenants"). Prior to the bankruptcy filing, each of the Tenants had entered into agreements ("Agreements") with the Debtors, under which the Tenants operated various retail facilities on the Debtors' premises. Whether the Agreements are in fact true leases or memorializations of some other form of contractual relationship (e.g., management or joint venture agreements) is an issue in dispute that must be decided in order for the Court to determine whether the Tenants are entitled to protections afforded by § 365(h).

This matter also comes before the Court on the Debtors' motion to dismiss the first amended adversary complaint ("Complaint") filed by IDEA against the Debtor/Defendant,[4] seeking temporary and permanent injunctive and declaratory relief. The Court addresses only Count One of the Complaint, which consists of IDEA's request to preliminarily enjoin the

---

[2] The Amenity Tenants consist of Exhale Enterprises XXI, Inc., GRGAC1, LLC, GRGAC2, LLC, GRGAC3, LLC, Mussel Bar AC, LLC, PM Atlantic City, LLC, RJ Atlantic City, LLC and The Marshall Retail Group, LLC.

[3] The LDV Tenants consist of American Cut AC Marc Forgione, LLC, Azure AC Allegretti, LLC, and Lugo AC, LLC. The group of entities that now constitute the LDV Tenants were originally part of the Amenity Tenants, but later obtained separate counsel and received designation as the LDV Tenants.

[4] After the Court approved a sale of the Debtors' assets to Polo North Country Club, Inc., ("Polo North"), Polo North stepped into the shoes of the Debtors. On June 22, 2015, an order was entered which substituted Polo North as defendant in this adversary proceeding.

Defendant from engaging in conduct that prevents IDEA from enjoying its possessory rights, including the right to utilities and necessary easements. The Court has heard oral argument on June 11, 2015 and June 24, 2015 and has accepted, in lieu of testimony, the following documents and accompanying exhibits:

- First Amended Verified Complaint in Adversary Proceeding; Ad. Pro. No. 14-01756

- Affidavits of Michael I. Barry, Dkt. Nos. 1521 and 1782

- Affidavit of Kevin DeSanctis, Dkt. No. 1541

- Affidavits of Jason Spillerman, Dkt. Nos. 1828 and 1873

- Affidavit of John Meadow, Dkt. No. 1830

- Affidavit of Barbara Stack, Dkt. No. 1869

For the reasons set forth below, the Court denies the Defendant's pending motion to dismiss and grants, in part, the relief sought by IDEA in its Cross Motion and in Count One of the Complaint.

## PROCEDURAL BACKGROUND IN THE MAIN CASE

On June 19, 2014, Revel AC, Inc. and its affiliated debtors and debtors in possession ("Debtors")[5] each filed a voluntary petition for relief under Chapter 11 of the United States Code ("Bankruptcy Code").

On August 28, 2014, the Debtors filed a motion (the "Rejection Motion)" to reject the Agreements held with the Tenants. The Rejection Motion sought rejection of the Agreements *nunc pro tunc* to the Debtors' shutdown date of September 2, 2014 ("Shutdown Date"). On the Shutdown Date, the Debtors ceased operations and barred the Tenants from accessing the

---

[5] The Debtors owned and operated a 6.2 million square foot facility that served as a resort and casino, with retail stores, restaurants and bars on the premises.

premises. Each of the Tenants gave notice of its intent to continue exercising possessory leasehold rights under § 365(h).

On April 6, 2015, the Court entered an order ("Sale Order") approving the sale of the Debtors' assets to Polo North, pursuant to § 363 of the Bankruptcy Code. The sale closing occurred on the following day. Thereafter, on April 13, 2015, IDEA filed its Cross Motion, seeking clarification of its § 365(h) rights as they related to the pending Rejection Motion. Subsequently, on April 20, 2015, the Court entered an order granting the Rejection Motion.[6]

Polo North adopts the position originally set forth by the Debtor/Defendant, that the Tenants' § 365(h) elections were invalid because the Agreements are not true leases. Polo North contends that the Agreements are either management or joint venture agreements, and, consequently, there are no possessory rights capable of being retained by the Tenants. As such, the Agreements would not fall within the purview of § 365(h). Needless to say, the Tenants maintain that the dictates of § 365(h) do apply because the Agreements are indeed true leases. At this juncture, the parties seek a determination of their respective rights. For the reasons set forth below, the Court grants IDEA's Cross Motion in part, by reaffirming the applicability of § 365(h) with regard to the rejected Agreements.

**PROCEDURAL BACKGROUND IN THE ADVERSARY PROCEEDING**

On September 3, 2014, IDEA filed its initial verified complaint, which commenced an adversary proceeding against the Debtor/Defendant. As noted above, as a consequence of the § 363 sale, Polo North is now deemed the Defendant in this action. On September 26, 2014,

---

[6] The Tenants had also made certain administrative expense requests as to lost profits and other damages under the Agreements as a result of the Debtors' shutdown. The Debtors filed an objection to the administrative claims of the Amenity Tenants and the LDV Tenants. This objection has been resolved pending the Court's determination of the parties' respective § 365(h) rights. In other words, the Amenity Tenants and LDV Tenants intend to withdraw their administrative expense requests so long as the Court fixes their possessory rights under § 365(h).

IDEA filed its first amended Complaint. In Count One of the Complaint, IDEA seeks to preliminarily enjoin the Defendant from engaging in conduct that prevents IDEA from enjoying its possessory rights, including the right to utilities and necessary easements. On October 13, 2014, the Debtors filed a motion to dismiss the Complaint.

## JURISDICTION

The Court has jurisdiction over both the contested matter and complaint under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.

In *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006), the Third Circuit outlined the bankruptcy court's jurisdiction as follows:

> Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir.2005). The category of cases "under" title 11 "refers merely to the bankruptcy petition itself." *Id.* at 225–26 n. 38 (quotation and citation omitted). A case "arises under" title 11 "if it invokes a substantive right provided by title 11." *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.),* 72 F.3d 1171, 1178 (3d Cir.1996). Bankruptcy "arising under" jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." 1 Collier on Bankruptcy § 3.01[4][c][i] at 3–21–22 (15th ed. rev.2005); *see also Wood v. Wood (Matter of Wood),* 825 F.2d 90, 96–97 (5th Cir.1987). The category of proceedings "arising in" bankruptcy cases "includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." 1 Collier on Bankruptcy § 3.01[4][c][iv] at 3–31 (quotations and footnotes omitted).

> Proceedings "arise in" a bankruptcy case, "if they have no
> existence outside of the bankruptcy." *United States Trustee v.
> Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d
> Cir.1999). Finally, a proceeding is "related to" a bankruptcy case if
> "the outcome of that proceeding could conceivably have any effect
> on the estate being administered in bankruptcy." *In re Pacor, Inc.
> v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984); *see also In re
> Federal–Mogul Global, Inc.*, 300 F.3d 368, 381 (3d Cir.2002)
> (noting that *Pacor* "clearly remains good law in this circuit" in this
> respect).

*Stoe*, 436 F.3d at 216.

These matters are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A), (N),

and (O), and these matters "arise under" title 11. In *In re Bell*, 476 B.R. 168, 175 (Bankr. E.D.

Pa. 2012), the court explained that "arising under" jurisdiction includes any proceeding which

invokes a substantive right under the Bankruptcy Code. Indeed, the current action is one which

involves the substantive rights granted by § 365(h). *See In re Ciena Capital LLC*, 2009 WL

2905759, at *4 (Bankr. S.D.N.Y. July 28, 2009) (noting that § 365(h) is "a substantive section of

the Bankruptcy Code.").

A proceeding that arises under title 11 is also described as one that "involve[s] a cause of

action created or determined by a provision of title 11." *In re Ciena Capital LLC*, 2009 WL

2905759, at *5. In *Ciena Capital LLC,* the debtor subleased a portion of its property to Alstra,

and then rejected the lease. Among other things, Alstra sought a declaration regarding its

§ 365(h) rights. The court held that:

> [i]n seeking to apply a section of title 11 of the United States Code
> (the "Bankruptcy Code"), Alstra invokes the Court's "arising
> under" jurisdiction. Congress used the phrase "arising under title
> 11" to describe those proceedings that involve a cause of action
> created or determined by a provision of title 11. *Wood v. Wood
> (Matter of Wood),* 825 F.2d 90, 96 (5th Cir.1987). Indeed, the only
> reason that Alstra can avail itself of that section of title 11 is
> because of the Debtor's bankruptcy filing. Had there been no

> bankruptcy case, there would be no basis upon which Alstra could
> seek to have that section apply.
>
> The claims "arising under" Title 11 need not affect or benefit the
> estate as a condition of bankruptcy jurisdiction. *In re Housecraft
> Industries USA, Inc.,* 310 F.3d 64 (2d Cir.2002). Consequently,
> "arising under" jurisdiction is present "even if the litigation could
> not affect the estate." *Id.* Thus, the Court has jurisdiction to
> determine the issue raised by Alstra concerning that Bankruptcy
> Code section.

*In re Ciena Capital LLC*, 2009 WL 2905759, at *5. Here, the only reason that the Tenants may

avail themselves of the possessory rights set forth under § 365(h) is because of the Debtors'

bankruptcy filing. Thus, the Court holds that these proceedings are predicated upon a provision

of title 11, and qualify as matters "arising under" title 11.

At a bare minimum, the Court maintains "related to" jurisdiction over the disputes. If the

Agreements were deemed to not be true leases, so that § 365(h) would not come into play, the

Tenants would retain pre-petition breach of contract claims (or maybe even administrative

claims) against the estate. In that instance, the nature and extent of such claims would impact

confirmation of a plan of reorganization and the distribution to general unsecured creditors

thereunder.

A matter is "related to" a Chapter 11 case if it "could conceivably have any effect on the

estate being administered in bankruptcy." *Belcufine v. Aloe,* 112 F.3d 633, 636 (3d Cir. 1997)

*(quoting Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).  In *Belcufine*, the Third Circuit

further defined the test as whether the outcome of the case "could alter the Debtor's rights,

liabilities, options, or freedom of action (either positively or negatively) and which in any way

impacts upon the handling and administration of the bankrupt estate." *United States Trustee  v.

Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999). As the Eleventh Circuit

has stated, any "interpretation of [related to jurisdiction] must ... avoid the inefficiencies of

piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 787 (11th Cir. 1990). Without a doubt, resolution of the disputes between the Tenants and Polo North potentially impacts the Debtors' obligations and the continued administration of this Chapter 11 proceeding.

To the extent this Court's statutory jurisdiction remains at issue, the Court notes that it also possesses ancillary jurisdiction to hear these matters. Bankruptcy courts, as courts of limited jurisdiction, may exercise subject matter jurisdiction on two grounds: statutory jurisdiction under 28 U.S.C. § 1334 and ancillary (sometimes called inherent) jurisdiction. *See In re Fibermark, Inc.*, 369 B.R. 761, 764 (Bankr. D. Vt. 2007); *In re Chateaugay Corp.,* 201 B.R. 48, 62 (Bankr.S.D.N.Y.1996)*, aff'd* 213 B.R. 633 (S.D.N.Y.1997). The District Court, in *In re Chateaugay Corp*., held that "[b]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant under 28 U.S.C. § 1334." *Cf. Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled.").

The United States Supreme Court has held that federal courts may assert ancillary jurisdiction for two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380–81 (1994) (citations omitted). Here, the Court is asserting ancillary jurisdiction to

enforce the Sale Order, which expressly reserved this Court's jurisdiction over matters arising out of or related to the Sale Order. The Sale Order provides:

> **This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order**, the [Asset Purchase] Agreement or any related agreements, **including, without limitation: (i) any actual or alleged breach or violation of this Sale Order**, the [Asset Purchase] Agreement or any related agreements; (ii) the enforcement of any relief granted in this Sale Order; or (iii) as otherwise set forth in the [Asset Purchase] Agreement.

Sale Order, Dkt. No. 1550, ¶ 37 (emphasis added). The Sale Order further specifies that the sale was made subject to the possessory interests of the Tenants. The Sale Order states:

> Notwithstanding anything to the contrary in this Sale Order or the Agreement, the Sale of the Assets to [Polo North] pursuant to this Sale Order shall not be free and clear of (i) any existing tenancies and/or possessory interests of the Amenity Tenants, ACR and IDEA, respectively, pending the Debtors' rejection pursuant to section 365 of the Bankruptcy Code of the agreements containing such tenancies and/or possessory interests (the "Possessory Agreements"), and (ii) any rights elected to be retained by each of the non-debtor counterparties to the Possessory Agreements pursuant to section 365(h) of the Bankruptcy Code after the Debtors' rejection of the respective Possessory Agreements (such tenancies, interests and rights referred to in (i) and (ii) collectively, the "Possessory Interests").

Sale Order, Dkt. No. 1550, ¶ 18. Issues as to whether the Tenants possess any rights under § 365, and their ability to act on such rights over Polo North's objection, fall well within the parameters of ¶ 37 of the Sale Order, and this Court maintains exclusive jurisdiction to resolve the disputes.

As noted, the matters presented herein are core proceedings under 28 U.S.C. § 157(b). To the extent there is a challenge to the Court's ability to render a final judgment, the failure of the parties to object to the Sale Order constitutes consent to this Court's authority. The United States Supreme Court recently reaffirmed that "Article III is not violated when the parties knowingly

and voluntarily consent to adjudication by a bankruptcy judge." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015). The Supreme Court acknowledged that consent need not be express. *Id.* at 1947. Here, when the parties agreed to the terms of the Sale Order, they consented to the specific grant of both exclusive jurisdiction and authority of the bankruptcy court.

Lastly, venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The Court issues the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[7]

## DISCUSSION

### I.    *Cross Motion*

#### a.    *True Leases or Management / Joint Venture Agreements*

The Court rules that the Agreements are true leases. Each of the Agreements share certain characteristics, and therefore, the Court examines them together. First, the Court looks to New Jersey law to determine what constitutes a true lease.

> Generally, a lease exists when there is an agreement by the lessor to turn over specific premises to the exclusive possession of a lessee for a definite time period. In return, the lessor receives a payment of rent from the lessee. *Thiokol Chem. Corp. v. Morris County Bd. of Taxation,* 41 N.J. 405, 197 A.2d 176, 182 (1964). "Frequently, a lease is spoken of as a hiring of land, or a sale of the possession, occupancy and profits of land for a term." *Id.* Whether a lease exists depends on the intention of the parties as expressed by a written document or the conduct of the parties to the alleged lease. *Id.* Where the intentions of the parties is unclear, the burden is on the party asserting the existence of a lease to demonstrate a landlord-tenant relationship. *Id.; Town of Kearny v. Municipal Sanitary Landfill Auth.,* 143 N.J.Super. 449, 363 A.2d 390, 393–94 (1976); *Outerbridge Terminal, Inc. v. City of Perth Amboy,* 179 N.J.Super. 400, 432 A.2d 141, 144 (1980).

---

[7] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

*Matter of Great N. Forest Products, Inc.,* 135 B.R. 46, 55 (Bankr. W.D. Mich. 1991) (applying

New Jersey law). This Court regards *Thiokol Chemical Corp. v. Morris County Board of*

*Taxation*, 41 N.J. 405 (1964) as persuasive authority for what constitutes a true lease in the state

of New Jersey.  In *Thiokol,* the court held that

> whether a particular agreement is a lease depends upon the
> intention of the parties as revealed by the language employed in
> establishing their relationship, and, where doubt exists, by the
> circumstances surrounding its making as well as by their course of
> operation under it. 51 C.J.S. Landlord & Tenant s 202e. And, in
> situations where the ambiguity or doubt gives rise to a factual
> question as to the intention of the parties, the burden is on the party
> asserting it to demonstrate existence of the lessor-lessee
> relationship.

*Thiokol,* 41 N.J. at 417. The Defendant places before the Court ample case law supporting the

contention that a court must not be swayed by "form over substance" when determining the

existence of a true lease. While this maxim is accurate, at some point form becomes substance.

We have reached that point. The express terms of the Agreements, together with supporting

affidavits, make it clear that the Debtors and the Tenants had the unequivocal intention of

entering into true lease agreements. As set forth in *Thiokol, supra,* the intention of the parties

may be revealed by language in the Agreements. Within the Agreements, the terms "tenant",

"lease", "landlord", and "rent" are used hundreds, if not thousands of times. Moreover, each of

the Agreements contain explicit language that illustrate the creation of a true lease. For instance,

section 21.12 of IDEA's Agreement expressly states that

> [n]othing contained in this Lease shall be deemed or construed as
> creating the relationship of principal and agent, employer and
> employee or of partnership or joint venture between the parties
> hereto, it being understood and agreed that neither the method of
> computing rent, payment of the Tenant Fees nor any other
> provision contained herein nor any acts of the parties hereto shall
> be deemed to create any relationship between the parties **other
> than that of Landlord and Tenant.** The provisions of this lease
> relating to the Percentage Rent payable hereunder are included

> solely for the purpose of providing a method whereby adequate
> rent is to be measured and ascertained.

IDEA Lease Agreement, Dkt. No. 1521, Exhibit A-2, section 21.12 (emphasis added). Similar

language is contained in the Agreements held by the Amenity Tenants and the LDV Tenants.

Additional provisions in the Agreements serve as indicia that the parties intended to create

possessory leasehold interests. For instance, the Agreements contain quiet enjoyment provisions.

Such language, which grants the Tenants the right to enjoy the property for the purpose for

which it was leased, is typically found in lease agreements and suggests a grant of possessory

rights.

In the resolution of ambiguity or doubt, the Court considers the factors listed in *Thiokol*,

*supra,* as stated below:

> [I]n the resolution of ambiguity or doubt, absence of (1) a
> stipulation for rent as such, or other consideration regarded by the
> parties as constituting payment for the transfer of possession, and
> (2) a term; and presence of (1) limitations on exclusive possession
> and control of the premises, and (2) a right in the owner to revoke
> the permit to use at any time, are factors militating against the
> existence of a lease.

*Id.* First, the Agreements provide for the payment of rent. Polo North has adopted an argument,

previously set forth by the Debtors, that since rent payments are based on a percentage of

revenue, the Agreements do not qualify as true leases. The Court disagrees. As noted by the

Tenants, percentage rent leases have been accepted for over 100 years in New Jersey. *See*

*Thropp v. Field,* 26 N.J. Eq. 82, 83 (Ch. 1875); *see also In re Adoption of N.J.A.C. 13:38-1.3(f),*

N.J. Super. 536, 545 (App. Div. 2001) (noting that there exists "a longstanding common practice

of paying rent to a shopping mall landlord based on a percentage of gross income."). Second,

each Agreement provides for a set term of years, with options to renew at the end. Third, the

Agreements grant the Tenants possessory interests and the rights to exclusive use of the leased

premises during the specified term. Lastly, the Agreements are not revocable at any time by the landlord, but rather, are revocable only upon certain events of default. Each of these factors militates in favor of finding that the Agreements are true leases.

The Court is cognizant that it must look at the substance of the transaction rather than simply the form of the agreement in determining whether there exists a true lease. For the foregoing reasons, the language contained in the Agreements, as well as the conduct of the parties undertaken from the outset of the Agreements, demonstrate typical landlord-tenant relationships, and the substance of the transactions buttress the Court's determination that the Agreements are indeed true leases.

### b. Interplay Between §§ 365 and 363

Since IDEA, the Amenity Tenants, and the LDV Tenants are each found to hold true leases, they are also entitled to their respective possessory rights under § 365(h). The Tenants retain these rights notwithstanding a sale of the Debtors' assets under § 363 of the Bankruptcy Code.

Sections 363(b) and (f) of the Bankruptcy Code permit for the sale of a debtor's assets free and clear of any interest in property. Here, the sale to Polo North was expressly made subject to the interests of the Tenants. *See* Sale Order, Dkt. No. 1550, ¶ 18. Notwithstanding, the Court rules that a § 363 sale does not and could not trump the rights granted to the Tenants by § 365(h).

Section 365(h) provides:

> (h)(1)(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—
>
> (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any

agreement made by the lessee, then the lessee under such
lease may treat such lease as terminated by the rejection; or

(ii) if the term of such lease has commenced, the lessee
may retain its rights under such lease (including rights such
as those relating to the amount and timing of payment of
rent and other amounts payable by the lessee and any right
of use, possession, quiet enjoyment, subletting, assignment,
or hypothecation) that are in or appurtenant to the real
property for the balance of the term of such lease and for
any renewal or extension of such rights to the extent that
such rights are enforceable under applicable nonbankruptcy
law.

(B) If the lessee retains its rights under subparagraph (A)(ii), the
lessee may offset against the rent reserved under such lease for the
balance of the term after the date of the rejection of such lease and
for the term of any renewal or extension of such lease, the value of
any damage caused by the nonperformance after the date of such
rejection, of any obligation of the debtor under such lease, but the
lessee shall not have any other right against the estate or the debtor
on account of any damage occurring after such date caused by such
nonperformance.

11 U.S.C. § 365(h). This Court previously has addressed the interplay between §§ 363 and 365.

In *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 777 (Bankr. D. N.J. 2014), this Court held that

nothing in § 363(f) trumps, supersedes, or otherwise overrides the rights of licensees under

§ 365(n). The Court sees no reason to reach a different conclusion in the present case with regard

to the Tenants' rights under § 365(h). Inasmuch as there are notable similarities between

§ 365(n) and § 365(h), the *Crumbs* analysis is relevant here:

It is well established that the appropriate way to construe a statute
is to conclude that the specific governs over the general . . . *In re
Churchill Properties III, Ltd. P'ship,* 197 B.R. 283, 288 (Bankr.
N.D. Ill. 1996). In *Churchill*, the court recognized that § 365(h) is
specific, as it grants a particular set of clearly stated rights to
lessees of rejected leases. That is, Congress specifically gave
lessees the option to remain in possession after a lease rejection. If
the court were to allow a § 363(f) sale free and clear of the lessee's
interest, "the application of [§ 365(h) ] as it relates to non-debtor
lessees would be nugatory." *In re Churchill Properties*, 197 B.R. at
288. Indeed, "it would make little sense to permit a general

provision, such as [§] 363(f), to override [§ 365's] purpose. The Code is not intended to be read in a vacuum." *Id.*

…

Moreover, the legislative history of § 365(h) evinces that Congress had the desire to protect the rights of tenants.

> A 1978 Senate Report remarked that under the terms of § 365(h), "the tenant will not be deprived of his estate for the term for which he bargained." S.Rep. No. 95–989, at 60 (1978) . . . . The Section–by–Section Analysis of the 1994 amendments to the Bankruptcy Code further reflect a Congressional desire to protect the rights of those who are lessees of debtors:
>
> > This section clarifies section 365 of the Bankruptcy Code to mandate that lessees cannot have their rights stripped away if a debtor rejects its obligation as a lessor in bankruptcy. This section expressly provides guidance in the interpretation of the term "possession" in the context of the statute. The term has been interpreted by some courts in recent cases to be only a right of possession (citations omitted). This section will enable the lessee to retain its rights that appurtenant to its leasehold. These rights include the amount and timing of payment of rent or other amounts payable by the lessee, the right to use, possess, quiet enjoyment, sublet and assign.

*In re Zota Petroleums, LLC,* 482 B.R. 154, 161–62 (Bankr. E.D. Va. 2012) (citations omitted). The court in *In re Haskell L.P.,* 321 B.R. 1 (Bankr. D. Mass. 2005) also noted the legislative history to § 365(h), and denied the debtor's motion to sell real property free and clear of a leasehold interest under § 363(f) because such a sale would permit the debtor to achieve under § 363 what it was proscribed from achieving under § 365(h), namely, stripping the lessee of its rights to possession. This line of reasoning fits squarely with Congressional intent, and with the principle of statutory construction that the specific governs over the general.

*In re Crumbs Bake Shop, Inc.,* 522 B.R. at 777-78.

16

### c.   *Respective Rights and Obligations under Rejected Agreements*

Before the Sale Order was entered, the Debtors were the landlords under the Agreements. As a consequence of the sale, Polo North has stepped into the shoes of the Debtors, and thus, Polo North is now treated as the landlord, with both the benefits and burdens of § 365. At the time of the Rejection Motion, the Tenants elected to remain in possession of the leased premises pursuant to § 365(h). Under § 365(h), the Tenants are entitled to remain in possession for the balance of the terms set forth in the Agreements, and any renewal or extension period. § 365(h)(1)(A)(ii). During their time in possession, the Tenants retain the right to use and quiet enjoyment of the premises, as well as such rights appurtenant to the real property. Appurtenant rights include such privileges which are incident and necessarily connected to the real estate. Furthermore, the Tenants may offset (against rent) any damages caused, after rejection, by the Debtors' nonperformance. § 365(h)(1)(B). Inasmuch as the Tenants have elected to remain in possession, their rights to damages as a result of rejection (which was granted *nunc pro tunc* to the Shutdown Date) is limited to setoff against future rents. After rejection, the landlord is no longer obligated to continue performance under the lease, other than to provide the tenant with possession of the premises, and the rights appurtenant thereto. *See In re Flagstaff Realty Associates*, 60 F.3d 1031, 1034 (3d Cir. 1995) ("The primary function of rejection is to 'allow a debtor-lessor to escape the burden of providing continuing services to a tenant' [and] rejection 'relieves the estate from covenants requiring future performance, such as the provision of utilities, repairs, maintenance and janitorial services by the debtor'") (citations omitted).[8] The

---

[8] *But see Saravia v. 1736 18th St., N.W., Ltd. P'ship*, 844 F.2d 823, 827 (D.C.Cir.1988) ("Inasmuch as the obligations imposed by District of Columbia for the benefit of public health and safety are independent of private leases, we are of the view that rejection of leases under section 365(h) has no bearing on the debtor-landlord's obligations under applicable local law.") However, *Saravia* is factually distinguishable from the instant case because *Saravia* dealt with residential, not commercial, property. *See In re Old Carco LLC*, 406 B.R. 180, 202 (Bankr. S.D.N.Y. 2009) (noting that *Saravia* addressed residential buildings, so its holding did not apply to a case involving commercial property).

Court reaffirms that any undertakings required by the landlord in order to allow the Tenants to restart operations cannot come at the expense of Polo North.

## II.      Adversary Proceeding

The Court grants, in part, IDEA's preliminary injunction request. To qualify for preliminary injunctive relief, a litigant must demonstrate "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). IDEA has demonstrated a likelihood of success on the merits because § 365(h) protects IDEA's rights under the Agreement that are in or appurtenant to the real property. In this regard, IDEA's quiet enjoyment and use of the facilities, protected under § 365(h), requires access to the building's infrastructure. IDEA will suffer irreparable harm if the injunction is denied, because without the right to possession and access to the property's energy distribution systems, IDEA is likely to suffer a loss that threatens the very existence of its business. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) ("It is also well settled that economic loss does not, in and of itself, constitute irreparable harm....**Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [petitioner]'s business**.") (emphasis added). Furthermore, there is nothing before the Court that suggests IDEA's continued use of the leased premises would result in greater harm to Polo North. Lastly, the public interest favors such relief because it is consistent with and in furtherance of provisions set forth under the Bankruptcy Code, and the recommencement of operations would result in the creation of jobs and revitalize a depressed portion of Atlantic City.

Polo North shall be preliminarily enjoined from interfering with IDEA's ability to avail itself of the rights under the Agreement and appurtenant to the real property. This includes the right to quiet enjoyment. "An act or omission by a landlord, or someone acting under the landlord's authority, constitutes a breach of the covenant of quiet enjoyment … if the conduct 'renders the premises substantially unsuitable for the purpose for which [it was] leased,' or if it 'seriously interferes with the beneficial enjoyment of the premises [.]'" *Nhu Thi Do v. Phuong Trong Nguyen*, 2012 WL 3628784, at *4 (N.J. Super. Ct. App. Div. Aug. 24, 2012) (citing *Reste Realty Corp. v. Cooper,* 53 N.J. 444, 457 (1969)). In order to avoid breaching the obligation of quiet enjoyment, Polo North must refrain from interfering with IDEA's access to the premises, its infrastructure and distribution systems. IDEA must have access to utilities for operation, including electricity, hot and cold water, plumbing, gas, internet, cable and telephone service. Without these functionalities, the premises would be rendered substantially unsuitable for the purpose for which it was leased.

IDEA asserts that it is also entitled to an easement, as part of its appurtenant rights. However, the Court declines to grant IDEA an easement or license at this juncture. To grant IDEA with such tangible interests would enhance IDEA's rights, rather than preserve them. "Section 365(h) preserves certain tenant rights; it does not enhance them." *In re MMH Automotive Group, LLC*, 385 B.R. 347, 366 (Bankr. S.D. Fla. 2008). Quite simply, there is no need for this Court to grant or create an easement or license in favor of IDEA, as part of its preliminary injunction. IDEA is free to explore its entitlement to such relief during the balance of the litigation.

Rather, appropriate relief may be found in an order of the Court, preliminarily enjoining Polo North from interfering with IDEA's access to the premises, including infrastructure and distribution systems, so long as IDEA's use and access complies with all local, state and federal

regulations and laws. Notwithstanding, Polo North is not responsible for providing services, incurring costs, or increasing its liability. The Court reiterates that IDEA's possessory rights are subject to compliance with all local, state and federal regulations. However, assuming IDEA can satisfy all such requirements, Polo North cannot impede IDEA's efforts. Indeed, Polo North must provide sufficient access to allow IDEA (and all Tenants) to preserve physical assets, as well as to investigate, plan, and take the necessary steps to restart operations.

The Court highlights Section 12.1(e) of the IDEA Agreement, which states:

> In no event shall Landlord be liable to Tenant in damages or otherwise for any interruption, curtailment or suspension of any of the foregoing utility services, sewer and HVAC in the event of a default by Tenant under this Lease or due to repairs, action of public authority, strikes, acts of God, or public enemy, or any other cause, whether similar or dissimilar to the aforesaid. **Landlord shall, however, use its reasonable best efforts to restore the discontinued service in all situations which are not due to the fault of Tenant hereunder**.

IDEA Lease Agreement, Dkt. No. 1521, Exhibit A-1, section 12.1(e) (emphasis added). This Court's decision falls in line with the language set forth in the Agreement, and only commands Polo North to comply with its existing obligations.

## CONCLUSION

For the reasons stated above, IDEA's Cross Motion is granted in part. The Agreements are true leases, as opposed to management or other similar agreements. IDEA, the Amenity Tenants, and the LDV Tenants made valid elections to stay in possession of the leased premises pursuant to § 365(h). Furthermore, IDEA's request for a preliminary injunction is granted in part. IDEA is entitled to the possessory rights appurtenant to the real property, subject to compliance

with applicable local, state and federal laws and regulations. The Debtors' motion to dismiss is

denied.


Dated: June 24, 2015


Honorable Michael B. Kaplan
United States Bankruptcy Judge